Denise CRAFTS, Marlon Angel, Paul Cote, and Thomas DiPaulo, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, International Union of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Wilmington, and Local 435 United Automobile Workers of America, Defendants.

Civil Action No. 01–137–RRM.

United States District Court, D. Delaware.

March 13, 2002.

Denise Crafts, Marlon Angel, Paul Cote, Thomas DiPaulo, pro se.

Jennifer C. Bebko, Richards, Layton & Finger, P.A., Wilmington, DE; James M.L. Ferber, Esquire and Alison M. Day, Esquire, Littler Mendelson, P.C., Columbus, OH; counsel for General Motors Corporation.

Stephen Potter, Esquire, Potter, Crosse & Leonard, Wilmington, DE; counsel for International Union of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Wilmington, and Local 435 United Automobile Workers of America.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a labor case. Plaintiffs are employees of defendant General Motors Corporation at its plant located at Boxwood Road in Wilmington, Delaware (the "Boxwood Road plant") and members of the defendant international and local unions (collectively "the union defendants"). Defendant General Motors Corporation ("GM") is a Delaware corporation with its principal place of business in Detroit, Michigan. Defendant International Union of the United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) is the labor union representing GM's employees, including the plaintiffs. Defendant Local 435 United Automobile Workers of America is the local affiliate of the UAW for the Boxwood Road plant.

On February 28, 2001, the plaintiffs filed a pro se complaint alleging that GM and Local 435 modified the seniority rules of the collective bargaining agreement between the two on April 11, 2000. Plaintiffs are millwrights and allege that the changes to the seniority rules reduced their seniority relative to other millwrights. They further allege that GM announced it was laying off nine of the least senior millwrights on March 3, 2001, including the plaintiffs. The plaintiffs assert that, but for the April 11, 2000 change to the seniority provision, they would not have been laid off. Plaintiffs contend that the change to the seniority rules is an unfair labor practice in violation of the National Labor Relations Act, 29 U.S.C. § 158. They seek an injunction restraining defendants from interfering with the collective bargaining agreement, a declaratory judgment that the pre-April 11, 2000 seniority rules remain in effect, and costs.

The union defendants moved to dismiss the complaint as preempted by the National Labor Relations Act and within the primary jurisdiction of the National Labor Relations Board ("NLRB"). The union defendants also argued that plaintiffs' claims are time-barred. On April 25, 2001, the plaintiffs moved for leave to amend their complaint, which the court granted on May 21, 2001. The plaintiffs' amended complaint includes further facts regarding the seniority system utilized at the Boxwood Road plant and alleges that the defendants breached the local collective bargaining agreement in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Although it does not state so expressly, the plaintiffs' complaint also appears to allege that the union defendants breached a duty of fair representation to the plaintiffs.

Both GM and the union defendants have moved for summary judgment. In their motions, the defendants renew the argument that the plaintiffs' action is preempted by the exclusive jurisdiction of the NLRB. To the extent the plaintiffs' claims may not be preempted, GM argues that it did not breach a contract with the plaintiffs by modifying the seniority rules of the local collective bargaining agreement. The union defendants argue that they did not breach a duty of fair representation to the plaintiffs by agreeing to the modification because such agreement was not arbitrary, discriminatory, or in bad faith. This is the court's decision on the motions.

## I. *FACTUAL AND PROCEDURAL HISTORY*

The parties agree on the basic facts of this dispute. The following facts are taken from affidavits submitted by the parties.

GM and the UAW have been parties to a series of national collective bargaining agreements for nearly 70 years. The two currently have a national contract providing terms of employment for UAW members (the "National Agreement"), but it leaves many issues open for decision at the local level by agreement between the local union and GM. GM's Boxwood Road plant and Local 435 have a local collective bargaining agreement (the "Local Agreement") governing employment of union members with GM. A "Local Seniority Agreement," providing the seniority rules for UAW employees at Boxwood Road, is incorporated in the Local Agreement.

GM operates two divisions of employees at its Boxwood Road plant. Division I is the production division and Division II is the skilled trades division. Division II is further divided into various skilled trades, including millwrights. Paragraph 59 of the National Agreement, provides that seniority "shall be by non-interchangeable occupational groups between departments, or plant-wide as may be negotiated locally in each plant and reduced to writing." Seniority within the occupational groups is important to employees because it can determine the employee's shift assignment and priority for layoff. To track the seniority of employees in each group, GM and Local 435 maintain a seniority list. The Local Agreement further details that "[i]n placing employees on the seniority list in accordance with Paragraph 58 of the National Agreement, where two or more employees have the same seniority date, they shall be listed on the seniority list alphabetically by last name, A to Z." Although the term "seniority date" was not defined in the Local Agreement, the plaintiffs assert that seniority under this provision was measured from the date the individuals entered the skilled trade in which they worked, also known as the employee's "date of entry." The defendants have not disagreed with this assertion.

Plaintiffs all joined an apprentice class at Boxwood Road on September 28, 1992. The class was comprised of 15 persons, several of whom had previously worked at Boxwood Road as production workers or were transferees from another GM plant. For plaintiffs Angel, Crafts, and DiPaulo, their hiring as apprentices was their first employment with GM. Plaintiff Cote had been a production worker at Boxwood Road since 1985. Upon beginning their apprenticeship, all members of the apprentice class were informed that their "seniority date," for purposes of the Local Agreement, was September 28, 1992, the date they entered their skilled trade. Because the plaintiffs had last names near the beginning of the alphabet, all had a high seniority relative to the other members of the apprentice class, who all had the same date of entry into their skilled trade.

In 1993, GM management at Boxwood Road raised the possibility that layoffs among skilled trade apprentices might be required. According to GM's "People Systems Representative" at Boxwood Road, "the UAW Local 435 and GM acknowledged that the parties did not have a procedure in place to determine a tie breaker, in the event that more than one apprentice had the same date of entry into the skilled trades department." This statement is not strictly true, for the Local Agreement provided that the alphabetic order of last names was the tie breaker in such cases. But in any event, GM and Local 435 agreed to remedy this perceived shortcoming in the Local Agreement by entering a "Local Agreement Addendum Agreement." The Addendum provided that "[a]pprentices shall first be reduced based on their date of entry. If that is the same, the tie-breaker shall be Plant Seniority Date. If that is the same, the next tie-breaker shall be alphabetically, by last name, A to Z." The Addendum also stated that it "is not intended to modify, but rather clarify, existing National and Local Agreement language."

On April 11, 1995, GM and Local 435 entered into the Local Agreement that is currently in force. The Local Agreement incorporated the 1993 Addendum for apprentices. The Local Agreement provides that it is a "living agreement" without an expiration date. It states that "[t]he parties are empowered to make mutually satisfactory modifications, additions, deletions, or waivers to these Local Agreements." In early 2000, GM and Local 435 began considering the possibility of layoffs among the skilled trades. Although the 1993 Addendum specified priorities for apprentices, it did not apply to members of the skilled trades who were no longer apprentices, known as journeymen. At this time, plaintiffs were all journeymen millwrights.

On April 11, 2000, GM and Local 435 agreed to an "Agreement Clarification" that is the basis of plaintiffs' suit. It states, "[i]n the skilled trades, seniority is first by skilled trades date of entry; next by Plant Seniority Date; then by Corporate Seniority Date; and, finally, alphabetically by last name, A to Z. This is the method to be used for reduction-in-force and shift preference, those things that are normally determined by seniority." Plaintiffs alleged that the Agreement Clarification was actually a change in the Local Agreement because it had the effect of reducing their seniority. Relative to those millwrights with the same date of entry into the skilled trades, September 28, 1992, the plaintiffs all lost seniority to millwrights who began working for GM at an earlier date. Among its class of millwrights, plaintiff Angel's priority changed from 1st to 10th, plaintiff Cote's from 4th to 8th, plaintiff Crafts' from 5th to 12th, plaintiff DiPaulo's from 6th to 13th. Plaintiffs Angel, Cote, and DiPaulo filed a

grievance contesting the Agreement Clarification with the Local 435 Executive Board. The Executive Board denied that grievance on July 24, 2000 and the plaintiffs' group appealed that decision to the UAW. On December 18, 2000, the employees were told the UAW had remanded the appeal back to Local 435 for further consideration.

On February 1, 2001, GM announced it would layoff eleven millwrights on March 3, 2001. Based on their seniority, the four plaintiffs were all among those to be laid off. The plaintiffs brought suit on February 28, 2001.

## II. *DISCUSSION*

### A. *Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c) states that summary judgment should be granted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56 requires that the moving party inform the court of the basis for its motion and demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party, has shown an absence of genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Rule 56(e)).

### B. *Is the Plaintiffs' Action Preempted by the National Labor Relations Act?*

The union defendants and GM argue that plaintiffs' claim that the defendants actions constitute an unfair labor practice under the National Labor Relations Act is preempted by the exclusive jurisdiction of the NLRB. Therefore, they submit that this court should dismiss the action pursuant to *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

In *Garmon*, the Supreme Court held that neither state courts nor federal courts have jurisdiction over suits concerning "activity [which] is arguably subject to § 7 or § 8 of the [National Labor Relations] Act." *Garmon*, 359 U.S. at 245, 79 S.Ct. 773; *see also Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). As the Third Circuit has explained, "*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA, the cause of action is preempted." *Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir.1999). Sections 7 and 8 of the National Labor Relations Act have been codified as 29 U.S.C. § 157 and § 158. Plaintiffs in this case seek relief from both the union and GM under 29 U.S.C. § 158. Thus, plaintiffs' claims under the National Labor Relations Act are preempted by the exclusive jurisdiction of the NLRB. *See Garmon*, 359 U.S. at 242–44, 79 S.Ct. 773; *Voilas*, 170 F.3d at 378.

Plaintiffs argue, however, that their suit is not wholly preempted because

they assert claims other than unfair labor practices in violation of the National Labor Relations Act. According to the plaintiffs, their complaint also seeks relief for breach of the local collective bargaining agreement under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and therefore is not preempted by the NLRB's jurisdiction. *See Smith v. Evening News Ass'n,* 371 U.S. 195, 197, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (§ 301 claims not preempted by the National Labor Relations Act). Section § 301 provides that:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). While the plaintiffs did not assert a claim under § 301 in their original complaint, they did seek relief under that statute in their amended complaint. Furthermore, throughout briefing on the summary judgment motions the plaintiffs have described their claims as "hybrid" cause of action. A "hybrid" action alleges both that the employer has breached the collective bargaining agreement under § 301 and that the union violated a duty of fair representation to the plaintiffs.

The court agrees that, to the extent plaintiffs wish to pursue relief other than that under the National Labor Relations Act, 29 U.S.C. § 158, that relief is not barred by *Garmon.* Indeed, "hybrid" claims such as that brought by the plaintiffs here are well-within the typical jurisdiction of district courts. *See Vaca,* 386 U.S. at 185–88, 87 S.Ct. 903 (duty of fair representation); *Smith,* 371 U.S. at 197, 83 S.Ct. 267 (§ 301 claim); *Albright v. Virtue,* 273 F.3d 564, 566 (3d Cir.2001) (describing "hybrid" actions). Thus, the court finds that although the plaintiffs' unfair labor practices claims are preempted by the exclusive jurisdiction of the NLRB, the plaintiffs' "hybrid" claims are not preempted.

### C. Are the plaintiffs' claims barred by the statute of limitations?

■ In their motion to dismiss, the union defendants contend that plaintiffs' claims are barred by the six month statute of limitations for hybrid § 301 claims. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (claims for breach of the duty of fair representation are analogous to unfair labor practices claims and therefore subject to the six month statute of limitations in the National Labor Relations Act, 29 U.S.C. § 160(b)). The union defendants contend that because the Agreement Clarification was entered on April 11, 2000 and the plaintiffs did not file suit until February 28, 2001, the plaintiffs' suit is untimely.

In response, the plaintiffs argue that the time period should be tolled because they were pursuing redress through the grievance and appeal procedures of Local 435 and the UAW. Plaintiffs note that following the denial of their grievance by the Executive Committee of Local 435 on July 24, 2000, they filed an appeal with the UAW. They did not receive a decision from the UAW until December 18, 2000, slightly more than two months before they filed this suit.

Based on the affidavits submitted by the plaintiffs explaining their appeal to the UAW, the court concludes that the six-month statute of limitations should be tolled at least until December 18, 2000. *See Albright v. Virtue,* 273 F.3d 564, 566 (3d Cir.2001) (noting the statute of limita-

tions on an employee's hybrid claims begin to run when the futility of further appeals to the union is apparent). Thus, plaintiffs' February 28, 2001 complaint was timely.

D. *Must the plaintiffs establish that the union defendants breached their duty of fair representation before GM can be liable under § 301?*

■■ Both the union defendants and GM argue that the plaintiffs cannot establish the union defendants' breach of the duty of fair representation. GM is interested in the question of the union defendants' breach of duty because it asserts that plaintiffs' must successfully establish this breach before it can be held liable by its employees for breaching the collective bargaining agreements. GM's position is premised on the nature of "hybrid" claims under § 301. As the Supreme Court explained,

> [b]ecause most collective-bargaining agreements accord finality to grievance or arbitration procedures established by the collective-bargaining agreement, an employee normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance.

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (citing *DelCostello,* 462 U.S. at 163–64, 103 S.Ct. 2281). Thus, the Supreme Court's holding is premised on the typical requirement of collective bargaining agreements that employees can only challenge an employer's actions through union grievance or arbitration procedures. In such cases, an employee asserting the employer breached the collective bargaining agreement "is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason,

it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Vaca,* 386 U.S. at 185, 87 S.Ct. 903. Because employees are required to attempt to exhaust the union's grievance procedure before suing the employer for breach of that agreement, the employer cannot be held liable without a showing that the employee unsuccessfully sought relief through the union grievance procedure. The union's liability is premised on its failure to accord the employee that grievance process. *Id.* at 185, 87 S.Ct. 903. Thus, GM is correct that employee plaintiffs must usually show that the union defendants failed to adequately address their complaints in the grievance procedure before an employer can be held directly liable to the employees. *See Chauffeurs, Teamsters and Helpers,* 494 U.S. at 564, 110 S.Ct. 1339.

GM assumes, however, that this "general rule of labor law that members of a collective bargaining unit cannot ordinarily sue individually to vindicate their rights under the collective bargaining agreement," *Adams v. Gould, Inc.,* 739 F.2d 858, 866 (3d Cir.1984), is applicable in this case. However, neither GM nor the union defendants have cited or described the provision in either the National Agreement or Local Agreement that limits the rights of employees to the union's grievance procedure and prevents them from bringing suit directly. While the record in this case indicates that such a grievance procedure existed, neither party has shown that it was the exclusive remedy available to the employees. Without considering the grievance procedures available under the collective bargaining agreements, the court is hesitant to require a showing that the union defendants breached their duty of representation before addressing whether GM can be liable for breach of contract.

Because of the circumstances of this case, however, the court need not resolve whether the plaintiffs satisfactorily exhausted the grievance remedies provided in the collective bargaining agreements, if any. The court concludes, for the reasons that follow, that the plaintiffs cannot establish either the union defendants' breach of their duty of representation or GM's breach of the National or Local Agreements. Therefore the relationship between liability under these theories is moot.

### E. Can the plaintiffs establish that the union defendants breached their duty of fair representation?

■ "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. 903; *see also Air Line Pilots Assoc., Int'l v. O'Neill,* 499 U.S. 65, 77, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (applying the standard in *Vaca* to negotiation of a collective bargaining agreement). The plaintiffs' complaint in this case alleges that Local 435's decision to enter the Agreement Clarification and its decision not to act on the plaintiffs' grievance were arbitrary, discriminatory, and in bad faith. Similarly, the plaintiffs charge the UAW's decision not to act on the appeal of its grievance was arbitrary, discriminatory, and in bad faith. The plaintiffs' argue that the union defendants' decisions discriminated against them and lacked justification.

In response, the union defendants contend that their decision to agree to the alteration of the seniority provisions was not arbitrary. To the contrary, by adding plant seniority and corporate seniority to the list of factors considered, the new seniority provisions actually reduce arbitrariness by diminishing reliance on the alphabetic position of the employee's last name as a seniority tie-breaker. Because the use of plant seniority and corporate seniority is consistent with the union defendants' objective of recognizing service to GM and the Boxwood Road plant, the union defendants contend the decision to agree to the seniority changes was in good faith and non-discriminatory. Concomitantly, Local 435's decision to reject the plaintiffs' grievance, and the UAW's decision to refer the appeal back to Local 435, were also in good faith and non-discriminatory.

■ The court agrees that the union defendants' decision to change the seniority provisions and their refusal to act on plaintiffs' grievance did not violate the union defendants' duty of representation. In the context of negotiating the terms of collective bargaining agreements, "the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a 'wide range of reasonableness,' that it is wholly 'irrational' or 'arbitrary.'" *Air Line Pilots Assoc., Int'l,* 499 U.S. at 78, 111 S.Ct. 1127 (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). It is entirely rational for the union to agree that earlier service with GM and at the Boxwood Road plant should be credited as part of the seniority calculations for the skilled trades. Moreover, the Agreement Clarification brings the seniority provisions for journeyman into line with the 1993 Local Agreement Addendum for apprentices. The union defendants' decision to add further specificity to the seniority provisions for the skilled trades was neither irrational or arbitrary

The plaintiffs have also failed to show how the union defendants' decisions were discriminatory. While it was true that the changes improved the seniority of those

journeymen with earlier service with GM while reducing the seniority of journeyman with last names near the beginning of the alphabet, this alleged "discrimination" does not violate the duty of representation. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953) (seniority distinctions in favor of returning war veterans was reasonable and not discriminatory). As the Third Circuit has observed, "seniority differences disadvantageous to a segment of a collective bargaining unit have been upheld ... where the distinctions were found to fall within the range of reasonableness which governs the union's fiduciary responsibility to its members." *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1014 (3d Cir. 1977). The distinctions drawn between employees by the union defendants in this case were reasonable and therefore within the discretionary bargaining authority of the union defendants. Therefore, the court holds the distinctions between employees drawn by the union defendants were not discriminatory.

The court concludes that the plaintiffs cannot show the union defendants' actions violated their duty of representation. The plaintiffs have not shown that "the evidence is such that a reasonable jury could return a verdict" that the union defendants acted in an arbitrary or discriminatory matter. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

F. *Can GM and the union defendants be liable under § 301 for breach of the collective bargaining agreements?*

The essence of plaintiffs' complaint is that GM and the union defendants violated the Local Agreement by changing its seniority provisions. The plaintiffs allege, however, that this change also breached several different provisions of the National and Local Agreements, including: (1) the requirement of the National Agreement that "modifications and supplements" to local seniority agreements be in writing and subject to the approval of GM and the UAW; (2) the local seniority agreement's requirement that each party give 60 days notice prior to cancelling, modifying, or changing the agreement; (3) the local seniority agreement's prohibition on retroactive application.

GM and the union defendants contend that their Clarification Agreement did not change the terms of the Local Agreement, but rather clarified its terms. They note that the Local Agreement only states that "where two or more employees have the same seniority date, they shall be listed on the seniority list alphabetically by last name, A to Z." GM and the union defendants claim that the Clarification Agreement merely clarifies what is meant by "seniority date" and provides a more complete understanding of that term before employing the alphabet as a tie-breaker. Because GM and Local 435 merely clarified the Local Agreement, the defendants state they had no duty to provide the 60 days notice or receive UAW approval.

Additionally, the defendants contend that even if the Clarification Agreement is viewed as a change to the Local Agreement, making such a change was within the authority of the parties. Because the Local Agreement is a "living agreement" that provides for its modification, the defendants submit that it was within their authority to make reasonable and necessary changes.

 The court agrees with the plaintiffs that the Clarification Agreement did not merely clarify what was meant by "seniority date" in the Local Agreement. The plaintiffs have shown that this date was uniformly understood by the parties to be the date employees entered the skilled

trades. Thus, even if the term "seniority date" were ambiguous, plaintiffs have shown its meaning was well-known by the parties and that the Clarification Agreement was a departure from this well-known meaning.

However, the Local Agreement preserves the right of GM and Local 435 to make changes to the agreement. The Local Agreement contains a "Memorandum of Understanding—Local Changes and/or Waivers," which states, "[t]he parties are empowered to make mutually satisfactory modifications, additions, deletions, or waivers to these Local Agreements on an ongoing basis which are in line with the Wilmington Plant operating philosophies." Given this provision, the plaintiffs have not explained how GM and Local 435 acted beyond their authority to change the Local Agreement.

■ Furthermore, the plaintiffs have not explained how the Clarification Agreement violated the retroactivity provisions of the Local Agreement. Because the changes in seniority only affected the employees' seniority going forward, the plaintiffs have not shown how such changes have retroactive effect.

■ The plaintiffs' other allegations that GM and Local 435 breached the Local Agreement relate to procedural requirements governing the relationship between those parties and are not rights personal to the employees. The plaintiffs allege that the parties breached the provision of the Local Agreement requiring 60 days notice to the other party and the provision of the National Agreement requiring UAW approval of the Local Agreements. Accepting as true the plaintiffs' allegation that there was no 60 days notice transferred between GM and Local 435 and that the UAW did not approve of the change, the plaintiffs' have not shown how they were damaged by the failure to comply with these provisions.

Therefore, the court concludes that the defendants' have shown they are entitled to summary judgment on plaintiffs' claims that the defendants breached the collective bargaining agreements between the parties and that the union defendants breached their duty of representation to the plaintiffs.

## III. CONCLUSION

The court finds that the plaintiffs' "hybrid" action is not preempted by the exclusive jurisdiction of the NLRB and is timely. Therefore, the court will deny the union defendants' motion to dismiss. The court concludes, however, that the plaintiffs cannot establish that the union defendants violated their duty of representation or that GM and the union defendants breached a collective bargaining agreement in violation of § 301 of the Labor Management Relations Act. Thus, the court will grant the motions for summary judgment filed by both GM and the union defendants.

Should the plaintiffs wish to appeal this judgment, the court directs their attention to Federal Rules of Appellate Procedure 3 and 4, including the thirty day limitation for filing a notice of appeal in Rule 4(a)(1)(A).