NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1690
_____

JAMES HUGHES; MELISSA HUGHES;
JOHN K. HUGHES; BEVERLY HUGHES,
Appellants

v.

UNITED PARCEL SERVICE, INC;
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 623; JOHN DOES 1-10
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-14-cv-03822)
District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2016
_____

Before: JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: February 1, 2016)

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

James Hughes and John K. Hughes (collectively, "Appellants"), along with their respective spouses, appeal from the dismissal of their complaint pursuant to the Rule 12(b)(6) Motion filed by Appellees, United Parcel Service, Inc. ("UPS"), and the International Brotherhood of Teamsters, Local 623 ("Teamsters"). For the reasons set forth below, we will affirm the judgment of the District Court.

## I. BACKGROUND

Appellants are employees of UPS and members of the Teamsters union. Appellants had worked for UPS as part-time "air drivers" for twelve years and attained an hourly pay rate of $23.70 when, in January 2012, they learned that full-time positions were opening. Appellants allege that they asked certain members of the Teamsters whether their rate of pay would change if they became full-time employees and were told that it would not. "Based on these representations, the collective bargaining agreement [("CBA")], and the job descriptions for the full-time positions, [Appellants] applied for and were hired by Defendant, UPS[,] for full-time employment as air drivers." (App. 25.) When they received their first paycheck as full-time employees, Appellants

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

discovered that their hourly rate of pay had dropped to $13.50 and that their seniority had been eliminated.

Upon discovering the reduction in their rate of pay, Appellants "immediately contacted UPS" and were told that "their previous wages would not be restored." (App. 26.) Appellants allege that they contacted the National Labor Relations Board, which was unable to help, and filed grievances with the Teamsters.[1]

On June 4, 2014, Appellants and their spouses filed a state court complaint against UPS and the Teamsters, in which they alleged breach of contract (Count One); violation of Pennsylvania Wage and Payment Collection Law (Count Two); unjust enrichment (Count Three); loss of consortium (Count Four); and violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (Count Five).[2]

On June 19, 2014, the Teamsters removed the matter to the United States District Court for the Eastern District of Pennsylvania on the ground that Appellants' claims all arose under the CBA and were thus preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 ("Section 301").[3] The Teamsters then moved

---

[1] Appellants have not argued that they complied with the grievance procedure set forth in Article 49 of the CBA, discussed below.

[2] Appellants ultimately withdrew the claims alleged in Count Five in their omnibus response to Appellees' motions to dismiss.

[3] Section 301 confers federal jurisdiction on claims arising under CBAs. *See N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) (noting that "complete preemption 'operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint,'" and that Section 301 of the LMRA is one of only three examples of

3

to dismiss, and Appellants amended their complaint. Both the Teamsters and UPS moved to dismiss Appellants' amended complaint pursuant to Rule 12(b)(6). [4]

On March 6, 2015, the District Court granted Appellees' motion and dismissed Appellants' complaint with prejudice. *Hughes v. United Parcel Serv., Inc.*, No. CIV.A. 14-3822, 2015 WL 1021312, at *7 (E.D. Pa. Mar. 6, 2015). The Court determined that, although Appellants did not attach the CBA, the CBA was "integral to and explicitly relied upon" in the complaint. *Id.* at *2–3. Thus, the Court considered the CBA, which UPS attached to its motion in full and which the Teamsters attached in part. *Id.*

The District Court determined that Appellants' claims arose out of their employment relationship, which is governed by the CBA, and that the claims are therefore preempted by Section 301. *Id.* at *4–5. Because federal labor law "requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress," *id.* at *5 (quoting *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652 (1965)), the District Court determined that Appellants "were first required to exhaust their available administrative remedies prior to initiating this suit," *id.* at *6.[5]

---

complete preemption that the Supreme Court has recognized) (quoting *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999).)

[4] All references to the complaint in this opinion will be to the amended complaint, which did not differ substantially from the original complaint.

[5] Although the District Court uses the term "administrative remedies," that might be seen as a misnomer. The District Court's reference is to the CBA grievance procedure, which is a contractual remedy, different in kind from the government-

The Court thus dismissed Appellants' state-law claims for failure to exhaust the remedies available under the CBA. *Id.* The Court also dismissed the loss of consortium claims asserted by Appellants' spouses, because those derivative claims could not proceed independently of Appellants' claims. *Id.* The Court determined, finally, that granting Appellants leave to amend their complaint would be futile given the dispositive nature of Appellants' failure to exhaust the remedies available under the CBA. *Id.* The Court accordingly dismissed Appellants' claims with prejudice. *Id.* at \*7. This timely appeal followed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

We review a district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) de novo. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015). Thus, "we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242–43 (3d Cir. 2015) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft*

provided administrative procedures and remedies one often thinks of when hearing the term "administrative remedies."

5

*v. Iqbal*, 556 U.S. 662, 678 (2009)).  Rather, "[t]o prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### III. ANALYSIS

Appellants raise three arguments on appeal.  First, they contend that the District Court erred in considering the CBA because it was neither attached to nor integral to the complaint.[6]   Second, they assert that what they seek to litigate is an extra-CBA promise to pay that is not preempted by Section 301, and that the District Court should thus have remanded the case to state court in lieu of dismissing it.  Finally, Appellants contend that they should have been granted leave to amend their complaint, to cure any perceived deficiencies.  For the reasons set forth below, these claims are unavailing.

### A.  Consideration of the CBA

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010).  Even if a plaintiff does not attach the subject documents to the complaint, the court may consider them if a defendant

---

[6] Appellants also assert that the Court should not have considered the CBA because "movants' motion did not attach the entirety of the CBA upon which there [*sic*] Respondents, Hughes' [*sic*] could argue from the CBA contrarily." (Appellants' Br. 19.) Although the Teamsters proffered only portions of the CBA, UPS attached a complete copy of the agreement to its motion to dismiss.  After UPS filed that motion, Appellants filed both a response and a sur-reply.  Appellants thus had ample opportunity to argue "contrarily," and this argument is without merit.

6

attaches them to a motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)). When a plaintiff relies on a document without attaching it to the complaint, the plaintiff nevertheless has notice that the document will be at issue. *Id.*

Because notice to the plaintiff is the principal reason for which courts decline to look beyond the complaint, the consideration of documents upon which the plaintiff relies does not implicate this rationale. *Id.* Indeed, failure to consider such documents would raise the countervailing concern that "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

Appellants contend that their complaint did not rely on the CBA. However, the complaint provides that, "[a]t all times material, Plaintiffs [*sic*] employment with Defendants was subject to a [CBA]. [In possession of Defendants]." (App. 26 (third bracketed phrase in original).) Appellants incorporated this statement in each of the counts alleged, and the dispute unquestionably arises out of Appellants' employment.

Appellants' complaint demonstrates awareness of the CBA, mooting concerns of notice. Failure to consider this potentially dispositive document—invoked but not attached by Appellants—would raise the concerns addressed in *Pension Benefit Guaranty*

7

*Corp.*, 998 F.2d at 1196. We therefore find that the District Court did not err in considering the parties' CBA.

**B. Effect of the CBA**

Consideration of the CBA, in turn, quickly reveals that the District Court also correctly dismissed Appellants' complaint.

Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 completely preempts state-law claims that require interpretation of CBAs, *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 373–74 (3d Cir. 1999) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394–95 (1987)), and converts the state-law claims into Section 301 claims to which "the statute of limitations for section 301 applies." *Berda v. CBS Inc.*, 881 F.2d 20, 28 (3d Cir. 1989).

This Court has recognized that, as a general matter, an employee who wishes to press contract-based grievances must endeavor to follow the grievance procedure upon which the employer and the union agreed prior to seeking judicial relief. *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999) (citing *Republic Steel Corp.,* 379 U.S. at 652; *Vaca v. Sipes,* 386 U.S. 171, 184 (1967)). More specifically, an employee who alleges that "the employer breached the [CBA] 'is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it

8

is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.'" *Crafts v. Gen. Motors Corp.,* 192 F. Supp. 2d 310, 317 (D. Del. 2002) (quoting *Vaca*, 386 U.S. at 185); *accord McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007) ("It is well settled that if a CBA establishes a grievance and arbitration procedure for the redress of employee complaints, employees wishing to assert claims based on a CBA first must exhaust the grievance procedure before resorting to a judicial remedy.").

The CBA that governs Appellants' employment delineates grievance procedures for "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement or Supplements hereto." (App. 73.) Appellants' allegations that they called the NLRB and filed grievances with the Teamsters do not satisfy the multi-step processes set forth in the CBA. As the District Court noted, Appellants "have failed to exhaust the administrative remedies available to them under the terms of the CBA." *Hughes*, 2015 WL 1021312, at *6. Appellants' state-law claims were thus properly dismissed, as were their spouses' claims for loss of consortium, which "must rise or fall" with the primary claims on which they depend. *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 300 n.6 (3d Cir. 2012).

## C. Dismissal with Prejudice

Although Appellants now characterize the source of the dispute as "[a]n extra-CBA promise to pay," (Appellants' Br. 15), the CBA controls the terms of Appellants' employment, including their rate of pay. Indeed, Appellants framed their complaint

against the backdrop of the CBA, including a claim for breach of that agreement, as discussed above. It was not until their sur-reply brief that Appellants suggested their claim should be construed to involve this alleged "extra-CBA promise." *Hughes*, 2015 WL 1021312, at \*6 n.3.

As this Court has noted, "[i]t is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.* (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)). Further, Appellants did not raise this argument in their response brief, but only in their sur-reply, which is not permissible. *Cf. United States v. Hoffecker*, 530 F.3d 137, 163 (3d Cir. 2008) (noting that failure to raise argument in opening brief constitutes waiver thereof). The District Court did not err in declining to consider Appellants' "extra-CBA promise" theory, which was not properly pled.

Nor did the District Court abuse its discretion in dismissing the complaint with prejudice. *See U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 234 (3d Cir. 2013) ("[W]e review the District Court's dismissal of [a] complaint with prejudice for an abuse of discretion." (citation omitted)). "[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Here, to the extent that Appellants assert an "extra-CBA promise," that promise was allegedly made by two officers of the Teamsters. But the Teamsters' duties of fair representation are limited to issues arising under the CBA by that document's merger clause, which provides that "during the lifetime of this Agreement there shall be no demands for collective bargaining negotiations as to any matter or issue not covered by the provisions of this Agreement or for the renegotiations of any of the provisions of this agreement." (App. 94.)

In short, if the subject promise fell within the CBA, then amendment would be futile in light of Appellants' failure to exhaust the CBA-specified grievance procedure. If the subject promise lies outside the CBA, then the claim is not actionable against the party alleged to have made the promise, the Teamsters. Viewed in either light, dismissal with prejudice was entirely appropriate.

## IV. CONCLUSION

We find that Appellants' arguments, as pled, are foreclosed by the CBA into which they entered. We also determine that amendment to plead the alleged "extra-CBA promise" would be futile. We therefore affirm.